Alvin GEDDIE, Appellant,

v.

UNITED STATES, Appellee.

Reginald Aaron GILBERT, Appellant,

v.

UNITED STATES, Appellee.

Nos. 5775, 5889.

District of Columbia Court of Appeals.

Argued Nov. 15, 1971.

Decided Dec. 20, 1971.

Louis James Morse, appointed by this court, for appellant Geddie.

David M. Davenport, appointed by this court, for appellant Gilbert.

Harry J. McCarthy, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Robert Alan Jones, Asst. U. S. Attys., were on the brief, for appellee.

Before FICKLING, GALLAGHER and YEAGLEY, Associate Judges.

FICKLING, Associate Judge:

After a trial by jury, appellants were convicted of being present in an illegal establishment (hereinafter PIE) in violation of D.C.Code 1967, § 22–1515(a). On this appeal appellants challenge the sufficiency of the evidence upon which they were convicted. After a careful review of the record, we have concluded that the evidence was sufficient, therefore, we affirm.

In October 1970 a Mr. Frank Macklin was granted permission to use an apartment located within the District of Columbia as a neighborhood drug rehabilitation center until such permission was withdrawn. On the early evening of December 21, 1970, appellants and five other individuals were arrested in the apartment for

unlawful entry [1] and being present in an illegal establishment. A search of the premises and of the individuals arrested revealed the following: one needle, one syringe, and one bottle cap "cooker" on a desk in the main room; one cooker and several empty gelatin capsules on the floor; one syringe in the pocket of Clarence Brown; one needle and one syringe in the pocket of appellant Geddie; and one needle and one syringe behind some jars in a kitchen cabinet. A chemist for the Bureau of Narcotics and Dangerous Drugs testified that his analysis revealed the presence of traces of heroin in the cookers and one of the syringes. A police officer testified that one of the needles had a red substance on it that "looked to me like blood." There was also testimony that Brown gave the physical appearance of one who had recently injected heroin.

The appellants and their codefendants testified that they were present in the apartment to attend a widely-advertised drug rehabilitation program. Some admitted to being presently addicted to drugs and others claimed to be former addicts. Mr. Macklin testified for the defense and stated that no one had permission to use or dispense drugs at the apartment. He also testified that before the program had begun in October, the apartment had been used as a "shooting gallery" and that it was possible that items of narcotics paraphernalia could have remained in the apartment after the program occupied the premises. Appellant Geddie stated that he had not been to the apartment previously and that he had been inside the apartment approximately three minutes before the police arrived. Appellant Gilbert testified that he had been inside the apartment about ten minutes before the police arrived.

The lessor of the apartment testified that, at least one month prior to the date of the raid, she had observed appellant Gilbert enter the bathroom of the apartment with a full syringe in hand and reappear with an empty syringe, "moaning and groaning," at which point she ordered Gilbert and several codefendants to leave the premises. Following the guilty verdict, a motion for judgment of acquittal was renewed and denied by the trial court. This appeal followed.

■ Appellant Geddie contends that the Government failed to prove that narcotic drugs were sold, administered, or dispensed on the premises *without a license* as required by D.C.Code 1967, § 33–402 et seq. We disagree.

Section 22–1515(a) of the D.C.Code provides:

§ 22–1515. Presence in illegal establishments

(a) Whoever is found in the District in a gambling establishment or an establishment where intoxicating liquor is sold without a license or *any narcotic drug is sold, administered, or dispensed without a license* shall, if he knew that it was such an establishment and if he is unable to give a good account of his presence in the establishment, be imprisoned for not more than one year or fined not more than $500, or both. (Emphasis added.)

Appellant Geddie would have us reverse his conviction because the Government failed to introduce any positive evidence of the nonexistence of a license to sell, dispense, or administer narcotic drugs at the apartment where the arrest occurred. This contention is not tenable.

It is elementary that the "burden is upon the government to prove each and every element of the crime beyond a reasonable doubt." United States v. Goodson, 439 F. 2d 1056, 1059 (5th Cir. 1971), and cases cited therein. However, the United States Supreme Court has stated that:

The jury is permitted to infer from one fact the existence of another essential to

---

1. A motion for judgment of acquittal was granted as to the unlawful entry charge.

guilt, if reason and experience support the inference. In many circumstances courts hold that proof of the first fact furnishes a basis for inference of the existence of the second. (Footnote omitted.)

Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 1244, 87 L.Ed. 1519 (1943).

Therefore, applying the *Tot* standards to this case, the crucial question becomes, do "reason and experience" support an inference of the nonexistence of a license based on the facts presented by the Government? We hold that they do in the particular circumstances of the instant case where the only narcotic drug present was traces of heroin.

On the point of the reasonableness of any such inference, the Supreme Court has held that:

[I]t is not incumbent on the prosecution to adduce positive evidence to support a negative averment the truth of which is fairly indicated by established circumstances and which, if untrue, could be readily disproved by the production of documents or other evidence probably within the defendant's possession or control.

Rossi v. United States, 289 U.S. 89, 91–92, 53 S.Ct. 532, 533, 77 L.Ed. 1051 (1933), quoted with approval, United States v. Fleischman, 339 U.S. 349, 360–361, 70 S.Ct. 739, 94 L.Ed. 906, rehearing denied, 339 U.S. 991, 70 S.Ct. 1017, 94 L.Ed. 1391 (1950). *See also* 29 Am.Jur.2d Evidence § 153, at 184 (1967), and cases cited therein. The facts of this case undoubtedly meet these requirements. The established circumstances make the likelihood of the existence of any license virtually impossible.[2] Moreover, Mr. Macklin, the probable holder of any such license, testified for the appellants and stated that no drugs were dispensed or used on the premises with his permission. Any license to do so would

have been in his "possession or control." Yet none was proffered. Therefore it was not unreasonable for the jury to infer that no license existed despite the fact that the Government offered no testimony as to the nonexistence of a license. *Cf.* Rogers v. United States, 367 F.2d 998, 999–1000 (8th Cir. 1966), cert. denied, 386 U.S. 943, 87 S.Ct. 976, 17 L.Ed.2d 874 (1967); Reynolds v. United States, 289 F.2d 698, 699 (10th Cir. 1961).

The second element of the *Tot* test is whether "experience" supports the inference of no license to sell, administer, or dispense heroin. We think that Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), answers this point in the affirmative. In that case the Supreme Court upheld the statutory presumption "that possession of heroin is equivalent to possessing imported heroin."[3] 396 U.S. at 408, 90 S.Ct. at 648. While we are not concerned with a statutory presumption in the instant case, we see no reason not to notice the pronouncement pertaining to heroin made by the Supreme Court when it stated that:

All heroin found in this country is illegally imported. Those handling narcotics must register; registered persons do not deal in heroin and only registered importers and manufacturers are permitted to purchase stamps. . . .

. . . The same may be said for those who sell, dispense, or distribute the drug. . . . [396 U.S. at 421–422, 90 S.Ct. at 655.]

We think that the above quotation as to heroin meets the "experience" test of *Tot*. We wish to emphasize, as did the Supreme Court, that because of its unique nature, the standards which apply to heroin are not the same as those that apply to other narcotics. *See e. g., Turner, supra,* 396 U.S. at 418–420, 90 S.Ct. 642 (statutory presumption not valid as to co-

---

2. This point is discussed *infra.*

3. *See* 21 U.S.C. § 174 (1970) and 26 U.S.C. § 4704(a) (1970).

caine); Leary v. United States, 395 U.S. 6 (1969) (statutory presumption unconstitutional as to marihuana). For the foregoing reasons we hold that, in the instant case, the evidence was sufficient to prove beyond a reasonable doubt the nonexistence of a license.

 The other substantive points raised by appellants have previously been dealt with by this court and we adhere to those precedents: (1) D.C.Code 1967, § 22–1515(a) is not unconstitutional, United States v. McClough, D.C.App., 263 A.2d 48 (1970), and (2) paraphernalia in plain view supports inference of knowledge of illegal activity, Wells v. United States, D.C.App., 281 A.2d 226 (1971); Cook v. United States, D.C.App., 272 A.2d 444 (1971).

Affirmed.